IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LORI G. BRANDENSTEIN, | |
| Plaintiff, | CIVIL ACTION FILE NO. |
| v. | 1:17-CV-2712-WSD-JFK |
| PENNYMAC LOAN SERVICES, LLC, | |
| Defendant. | |

## FINAL REPORT AND RECOMMENDATION

Plaintiff Lori G. Brandenstein ("Brandenstein"), proceeding *Pro Se* (and asserting that she is "*Suis Juris in Propria Persona*"), commenced this civil action in the Superior Court of Cobb County, Georgia, with the filing of her Verified Complaint. [Doc. 1-1, Exhibit A – Verified Complaint ("Compl."), State Court Civil Action No. 17-1-4682-53]. Defendant PennyMac Loan Services, LLC ("PennyMac"), removed the complaint to federal court. [Doc. 1]. Pending before the court is PennyMac's motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for which relief can be granted as well as pursuant to Rules 4(m) and 9, and PennyMac's October 26, 2017, Supplement expressly waiving its service-related defense under Rule 12(b)(5). [Docs. 3, 6]. Plaintiff

Brandenstein has not filed a response.[1]  The matter has been submitted to the undersigned for a report and recommendation to the District Judge.

## I.    Factual Background

As an initial matter, the Complaint includes a number of conclusory allegations and citations to legal authorities that are not appropriate for inclusion in a complaint and will not be set forth in the following statement of facts.  See Moore v. McCalla Raymer, LLC, 916 F. Supp. 2d 1332, 1342 (N.D. Ga. 2013) ("The complaint contains whole paragraphs of legal argument, quotations, and citations which have no place in a complaint.") (citing Chevy Chase Bank, F.S.B. v. Carrington, 2010 WL 745771, at *4 (M.D. Fla. March 1, 2010) ("Huge swaths of the . . . Complaint are improper irrespective of their relevance, consisting of lengthy legal arguments, case citations,

---

[1] Plaintiff did not file a response in opposition to Defendant's motion to dismiss, and the time period for doing so has since expired.  For this reason, Defendant's motion is deemed unopposed.  See LR 7.1B, N.D. Ga. ("Failure to file a response shall indicate that there is no opposition to the motion.").  Granting Defendant's motion based solely on Plaintiff's failure to respond is within the discretion of a district judge.  See Magluta v. Samples, 162 F.3d 662, 664–65 (11th Cir. 1998).  However, the undersigned will review the merits of the motion because courts have not as a general rule automatically granted a motion to dismiss a complaint for failure to file a response when doing so would be dispositive of the litigation or of a given claim.  See Tobias v. Georgia Dep't of Corrections, 2009 WL 255632, at *1 (N.D. Ga. February 3, 2009); Perkins v. St. John Fisher College, 2006 WL 2728902, at *1 (W.D. Tex. July 21, 2006) (citing Johnson v. Pettiford, 442 F.3d 917, 918 (5th Cir. 2006)).

AO 72A
(Rev.8/82)

and quotations from treatises–material proper in legal memoranda, but almost never proper in a complaint.")).

The undersigned also notes that the complaint in this case is remarkably similar to the complaints filed in several other cases within this district and, in each instance, dismissal was found to be warranted. See, e.g., Winston v. 360 Mortg. Group, LLC, 2017 WL 4356918 (N.D. Ga. October 2, 2017) (dismissing complaint alleging fraudulent conversion, mortgage servicing fraud, "declaratory judgment (credit default swap)[,]" "unfair and / or deceptive business practices[,]" "fraud and/or attempted fraud[,]" and intentional infliction of emotional distress); Pessini v. Nationstar Mortg., LLC, 2017 WL 2197136 (N.D. Ga. April 25, 2017) (dismissing complaint as shotgun pleading and listing cases with "virtually identical" form complaints); Samuel v. Nationstar Mortg., LLC, 2015 WL 12227731 (N.D. Ga. July 27, 2015), report and recommendation adopted by 2015 WL 12434315 (N.D. Ga. August 13, 2015). "[P]laintiff's use of a form complaint evidences that her claims are not brought in good faith." Pessini, 2017 WL 2197136, at *4 (citing Martin v. Citimortgage, 2010 WL 3418320, at *6 n.8 (N.D. Ga. August 3, 2010), report and recommendation adopted by 2010 WL 3418322 (N.D. Ga. August 25, 2010)).

AO 72A
(Rev.8/82)

On a motion to dismiss under Rule 12(b)(6), the complaint's factual allegations are assumed true and construed in the light most favorable to the plaintiff. Hardy v. Regions Mortg., Inc., 449 F.3d 1357, 1359 (11th Cir. 2006); M.T.V. v. DeKalb County School Dist., 446 F.3d 1153, 1156 (11th Cir. 2006). "However, conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002) (citations omitted). The following factual allegations are drawn from the Complaint, certain attachments to the Complaint, and relevant public records.[2]

On June 19, 2017, Plaintiff Brandenstein initiated this litigation against Defendant PennyMac challenging PennyMac's conduct as it relates to the July 5, 2017, foreclosure of Plaintiff's former residence, real property located at 2244 Josephine Court, Marietta, Georgia, 30062 ("Property"). [Compl.]. PennyMac was the servicer of Plaintiff Brandenstein's mortgage loan on the Property. [Compl. ¶ 8].

---

[2] The Court has taken into consideration the loan documents referenced in Plaintiff's Complaint, see Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) (citation omitted), and has taken judicial notice, see Fed. R. Evid. 201, of the relevant public records, including those attached to Defendant's motion, Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1280 (11th Cir. 1998). Regarding any conflict between the allegations in Plaintiff's pleading and the actual records, the public records control. See Griffin Industries, Inc. v. Irvin, 496 F.3d 1189, 1205–06 (11th Cir. 2007).

4

On January 30, 2010, Plaintiff Brandenstein, along with Richard W. Brandenstein ("R. Brandenstein"), who is not a complainant or party to the instant suit, obtained a mortgage loan from First Option Mortgage, LLC ("First Option" or "Lender"), in the principal amount of $213,776.00 ("Loan"). [Compl. ¶ 6]. In connection with and to secure payment on the Loan, Plaintiff and R. Brandenstein executed a Security Deed in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for First Option, the lender, and its successors and assigns. [Compl. ¶ 7; Doc. 1-3, Exhibit C – Security Deed]. The Security Deed was recorded on February 15, 2010, in Deed Book 14754, Pages 4296–4307 of the Cobb County, Georgia, records. [Security Deed].

On October 29, 2014, the Security Deed was assigned to Bank of America, N.A. ("BANA") by MERS. [Doc. 3-2, Exhibit A – Assignment; Compl. ¶ 7].[3] The

---

[3] Plaintiff alleges that MERS transferred all of its interest in the Security Deed to "a remote Special Purpose Vehicle Trust for a mortgage backed security (MBS)." [Compl. ¶ 7]. Assuming this allegation is true, the pooling of Plaintiff's mortgage with other loans into a securitized trust would not negate Plaintiff's obligation to make good on her promise to pay consistent with the terms of the Loan. See Walker v. U.S. Bank Nat'l Ass'n, 572 Fed. Appx. 740, 743 (11th Cir. 2014) (affirming dismissal of improper securitization claim "because Georgia courts have not held that improper securitization extinguishes obligation to pay a loan"); accord Merckerson v. Bank of America, Civil Action No. 1:10-CV-0050-WBH Order [Doc. 20] at *4 (N.D. Ga. April 22, 2010) (explaining that the securitization of a mortgage loan has no effect on a borrower's rights attendant to the loan and "certainly would not absolve Plaintiff from

AO 72A
(Rev.8/82)

assignment was recorded on November 19, 2014, in Deed Book 15199, Pages 4869–70 of the Cobb County, Georgia, records. [Assignment].

On or about May 2, 2017, due to Plaintiff's alleged default on the Loan, Defendant PennyMac, through the law firm of Rubin Lublin, LLC, advertised its first Notice of Sale Under Power ("Notice") of Plaintiff's Property scheduled to occur on July 5, 2017. [Compl. ¶ 8]. According to Plaintiff, the Notice did not identify the holder of the Security Deed and identified PennyMac as the loan servicer. [Compl. ¶ 8].

On May 12, 2017, Plaintiff sent PennyMac a request for disclosure, rescission, and validation of debt under TILA and a "qualified written request" ("QWR") under RESPA. [Compl. ¶ 10]. According to Plaintiff, Defendant PennyMac did not respond to her QWR. [Compl. ¶¶ 11–12].

At some point following Plaintiff's default on the Loan, BANA exercised the power of sale in the Security Deed and foreclosed on the Property July 5, 2017. The Property was transferred to Arch Property Holdings, LLC, via a Deed Under Power. [Doc. 4, Exhibit 1 – Deed Under Power]. On August 20, 2017, the Deed Under Power

---

having to make payments on his loan or somehow shield Plaintiff's property from foreclosure").

AO 72A
(Rev.8/82)

was recorded in Deed Book 15472 at Pages 3016–19 in the Cobb County, Georgia, records.  [Deed Under Power].

In her Complaint, Plaintiff identifies six causes of action, described as Counts I–VI.[4]  [Compl.].  Plaintiff Brandenstein identifies her claims as follows:   Count I – Fraudulent Conversion, Count II – Mortgage Servicing Fraud, Count III – Declaratory Judgment (Credit Default Swap), Count IV – Unfair and Deceptive Trade Practices / Fair Debt Collection Practices Act, Count V – Fraud / Attempted Fraud, and Count VI – Intentional Infliction of Emotional Distress ("IIED").  [Compl.].  Within the Fact Section, Plaintiff alleges violation of the Truth in Lending Act ("TILA") and the Real Estate Settlement Procedures Act ("RESPA"). [Compl.  ¶¶ 10–12].  In her prayer for

---

[4] To the extent Plaintiff Brandenstein employs "buzz words" asserting that no loan was made [Compl. ¶¶ 17, 31], that the banking system is "all made up" or a fiction [Compl. ¶ 20], that there is no debt and therefore no default at the time of foreclosure [Compl. ¶ 37], and that the mortgage should be set aside as null and void because the bank or lender provided no consideration to support the contract [Compl. ¶ 40], these random conclusions are not supported by any factual allegations and do not warrant discussion.  Likewise, Plaintiff's contention that PennyMac was required to "produce the note" is a legal argument that has been squarely rejected.  [Doc. 3-1 at 8, n.5 (citing Rene v. Carrington Mortg. Servs., LLC, 2015 WL 12085870, at *7 & n.15 (N.D. Ga. October 28, 2015), report and recommendation adopted by 2015 WL 12434454 (N.D. Ga. November 18, 2015); and You v. JP Morgan Chase Bank, 293 Ga. 67, 74, 743 S.E.2d 428, 433 (2013) ("Under current Georgia law, the holder of a deed to secure debt is authorized to exercise the power of sale in accordance with the terms of the deed even if it does not also hold the note or otherwise have any beneficial interest in the debt obligation underlying the deed."))].

AO 72A
(Rev.8/82)

relief, Brandenstein also requests prelitigation discovery and injunctive relief. [Compl., Prayer for Relief ¶¶ a, b, d].

On July 19, 2017, Defendant PennyMac properly and timely removed the case to this federal district court pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446.[5] [Doc. 1 – Notice of Removal ("Notice")]. Defendant asserts that Plaintiff's Complaint is subject to dismissal on multiple grounds, including Rules 4(m), 9, and 12(b)(6) of the Federal Rules of Civil Procedure, but has since expressly waived its service-related defense pursuant to Rule 12(b)(5) in favor of a ruling on the merits pursuant to Rule 12(b)(6).[6] [Docs. 3-1, 6 at 1]. Defendant further contends that the relief Plaintiff seeks is moot given that foreclosure has already occurred. [Doc. 3-1].

## II.     Rule 12(b)(6) Standard of Law

The Federal Rules of Civil Procedure include no requirement that a plaintiff detail the facts upon which the plaintiff bases a claim. Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader

---

[5] The Court is satisfied that federal subject matter jurisdiction exists. [Notice ¶¶ 7–31].

[6] See Fed. R. Civ. P. 12(h)(1); see also Pardazi v. Cullman Med. Ctr., 896 F.2d 1313, 1317 (11th Cir. 1990) ("Objections to service of process . . . like any other objection to jurisdiction over the person, can be waived by the party over whom jurisdiction is sought.") (citations omitted).

8

is entitled to relief." Fed. R. Civ. P. 8(a)(2) (as amended 2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964–65 (2007) (citations omitted); accord Financial Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (recognizing that "while notice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory") (citations and internal quotation marks omitted).

"Factual allegations must be enough to raise a right to relief above the speculative level," i.e., they must do more than merely create a "'suspicion [of] a legally cognizable right of action,' on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1965 (citations omitted; emphasis omitted). "Stated differently, the factual allegations in a complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief[.]'" Stephens,

500 F.3d at 1282 (quoting <u>Twombly</u>, 127 S. Ct. at 1966–67). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (citation omitted). A plaintiff's complaint will be dismissed if it does not contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>

The court's inquiry at this stage of the proceedings focuses on whether the challenged pleadings "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Erickson v. Pardus</u>, 127 S. Ct. 2197, 2200 (2007) (citations and internal quotation marks omitted). A court reviewing a motion to dismiss must keep in mind that a "motion to dismiss for failure to state a claim upon which relief can be granted merely tests the sufficiency of the complaint; it does not decide the merits of the case." <u>Wein v. American Huts, Inc.</u>, 313 F. Supp. 2d 1356, 1359 (S.D. Fla. 2004) (citing <u>Milburn v. United States</u>, 734 F.2d 762, 765 (11th Cir. 1984)). "Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law." <u>Bernard v. Calejo</u>, 17 F. Supp. 2d 1311, 1314 (S.D. Fla. 1998) (citing <u>Marshall County Bd. of Educ. v. Marshall County Gas Dist.</u>, 992 F.2d 1171, 1174 (11th Cir. 1993) ("[T]he court may dismiss a complaint . . . when, on the

basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.")); see also Glover v. Liggett Group, Inc., 459 F.3d 1304, 1308 (11th Cir. 2006); Aque v. Home Depot U.S.A., Inc., 629 F. Supp. 2d 1336, 1350 (N.D. Ga. 2009).

The law establishes that "[a] document filed *pro se* is 'to be liberally construed' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]'" Erickson, 127 S. Ct. at 2200 (citations omitted). Nevertheless, nothing in that leniency excuses a plaintiff from compliance with threshold requirements of the Federal Rules of Civil Procedure. "Even though a *pro se* complaint should be construed liberally, a *pro se* complaint still must state a claim upon which the Court can grant relief." Grigsby v. Thomas, 506 F. Supp. 2d 26, 28 (D. D.C. 2007).

The court will apply these standards in ruling on the motion [Doc. 3] to dismiss the complaint.

### III.    Discussion

### A.    Plaintiff Cannot Directly Challenge Foreclosure

As an initial matter, to the extent that Plaintiff Brandenstein is challenging the foreclosure itself (and no independent wrongful foreclosure claim is alleged), the

underlying Loan documents reveal that BANA – not PennyMac – was the foreclosing entity. [Doc. 3-1 at 8, n.5; Assignment]. And see O.C.G.A. § 23-2-114 ( "[p]owers of sale in deeds of trust, mortgages, and other instruments . . . shall be fairly exercised"); see also Mbigi v. Wells Fargo Home Mortg., 336 Ga. App. 316, 318, 785 S.E.2d 8, 13 (2016). And to the extent Plaintiff contends that there was no authority to foreclose, the terms of the Security Deed, "grant[ed] and convey[ed] to MERS . . . and the successors and assigns of MERS with power of sale, [the Property]." [Security Deed]. The Assignment states that MERS "hereby assign[s] and transfer[s] . . . all its right, title, and interest in" the Security Deed to BANA and its successors.[7] [Assignment]. BANA was entitled to exercise the power of sale in the Security Deed, see § 23-2-114, and Plaintiff's underlying challenge of the foreclosure is flawed. See Winston, 2017 WL 4356918, at **3–4 (citations omitted).

In addition, Brandenstein does not (and cannot) allege that she timely made all of her mortgage payments and does not allege that she ever tendered payment of the amount due on the Loan which is a prerequisite under Georgia law for stating a claim

---

[7] Plaintiff lacks standing to challenge the Assignment of the Security Deed from MERS to BANA. See Montgomery v. Bank of America, 321 Ga. App. 343, 346, 740 S.E.2d 434, 438 (2013) (finding that the plaintiff-borrower was not a party to the assignment of security deed and lacked standing to contest validity of assignment).

12

for wrongful foreclosure.  See <u>Heritage Creek Development Corp. v. Colonial Bank</u>, 268 Ga. App. 369, 601 S.E.2d 842, 844–45 (2004) (stating the elements of wrongful foreclosure claim under Georgia law and holding that plaintiff's own acts and omissions such as defaulting on the loan, failing to cure default, and failing to bid on the property at foreclosure despite receiving a foreclosure notice caused plaintiff's alleged damages)[8]; <u>accord Harvey v. Deutsche Bank Nat'l Trust Co.</u>, 2012 WL 3516477, at *2 (N.D. Ga. August 14, 2012) ("Failure to make the proper loan payments defeats any wrongful foreclosure claim.").

Moreover, because Plaintiff does not allege that she made the tender required to have the foreclosure sale set aside, Plaintiff is precluded from seeking equitable relief. See <u>Calhoun First Nat'l Bank v. Dickens</u>, 264 Ga. 285, 285–86, 443 S.E.2d 837, 838 (1994); <u>see also Sajous v. Specialized Loan Servicing</u>, 2015 WL 11347597, at *5 (N.D. Ga. July 22, 2015) (plaintiff not entitled to equitable or injunctive relief where plaintiff did not plead that she is in compliance with her loan obligations and / or has tendered payment for the amount due on the loan) (citations omitted), <u>report and</u>

_____

[8] "Georgia law requires a plaintiff asserting a claim of wrongful foreclosure to establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages." <u>Heritage Creek</u>, 268 Ga. App. at 371, 601 S.E.2d at 844.

13

recommendation adopted in part (all but "Alternative Recommendations") by 2015 WL 11492542 (N.D. Ga. August 10, 2015); and see Stewart v. Suntrust Mortg., Inc., 331 Ga. App. 635, 640–41, 770 S.E. 2d 892, 898 (2015) (affirming trial court's dismissal of request for injunctive relief where plaintiff's complaint revealed that the debt was in default at the time of foreclosure).

### B. Claims Based Upon Fraud / Fed. R. Civ. P. 9(b)

Plaintiff Brandenstein asserts fraud-based claims in Counts I, II, and V alleging fraudulent conversion, mortgage servicing fraud, and fraud or attempted fraud. Defendant moves to dismiss for failure to plead fraud with specificity as required by Rule 9(b) of the Federal Rules of Civil Procedure. [Doc. 3-1 at 5–10].

Rule 9(b) provides in pertinent part that, "In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b) (as amended 2007). The circumstances constituting fraud typically include "the time, place, and content of the false misrepresentations, the facts misrepresented, and the nature of the detrimental reliance[.]" Elster v. Alexander, 75 F.R.D. 458, 461 (N.D. Ga. 1977); and see Burgess v. Religious Technology Center, Inc., 600 Fed. Appx. 657, 663 (11th Cir. 2015) (holding that plaintiff's allegations that did not indicate the date, time or place of the misrepresentation did not meet heightened fraud pleading

14

requirement). "Notably, the '[f]ailure to satisfy Rule 9(b) is a ground for dismissal of a complaint.'" <u>FindWhat Investor Group v. FindWhat.com</u>, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting <u>Corsello v. Lincare, Inc.</u>, 428 F.3d 1008, 1012 (11th Cir. 2005)).

And in order to state a claim for common law fraud under Georgia law, Plaintiff must allege facts in support of the following elements: "(1) false representation by defendant; (2) with scienter, or knowledge of falsity; (3) with intent to deceive plaintiff or to induce plaintiff into acting or refraining from acting; (4) on which plaintiff justifiably relied; (5) with proximate cause of damages to plaintiff." <u>WESI, LLC v. Compass Environmental, Inc.</u>, 509 F. Supp. 2d 1353, 1358 (N.D. Ga. 2007) (citations and internal quotation marks omitted).

The Court agrees with Defendant that Plaintiff's conclusory allegations of fraud do not state a claim and do not comport with the strict pleading requirements of Rule 9(b). <u>See</u> <u>Elster</u>, 75 F.R. D. at 461; <u>and see</u> <u>Burgess</u>, 600 Fed. Appx. at 663; <u>see also</u> <u>Cooke v. BAC Home Loans Servicing, LP</u>, 2011 WL 4975386, at *3 (N.D. Ga. October 18, 2011) (dismissing unfair and deceptive act practices claim based upon alleged fraud where complaint contained legal conclusions that defendant engaged in "fraudulent, deceptive, unfair, and other wrongful conduct[,]" did not specify "facts and circumstances" that defendants allegedly failed to disclose, generally alleged

15

defendants used "various rates and charges to disguise the actual payment schedule and loaned amount" but no specific rates or charges and, therefore, did not satisfy Rule 9(b)) (citations and internal quotation marks omitted).

In Count I, Plaintiff alleges fraudulent conversion. Plaintiff's fraudulent conversion claim is a nonsensical challenge to the banking system, the validity of the Loan itself, and foreclosure of the Property. [Compl. ¶¶ 17–61]. For instance, in an effort to support her claim that there was no default at the time of foreclosure and that foreclosure amounted to conversion, Plaintiff alleges that the promissory note executed in connection with the Loan was "altered and converted into a negotiable instrument" that the banks do not account for and that created no actual money, that no loan was actually made and no debt existed, that the mortgage should be set aside as null and void because the bank or lender provided no consideration to support the contract, and that the Security Deed should be set aside for lack of consideration and disclosure violations of the truth in lending law. [Compl. ¶¶ 17, 19, 26, 31, 37, 40, 46]. Relying on the same premise, Brandenstein alleges that she was deceived "to believe that the lender really made a loan." [Compl. ¶ 31]. These are mere conclusory allegations not supported by any facts, and courts have routinely rejected such "'vapor money'" claims. Winston, 2017 WL 4356918, at *4 (quoting McCrary v. Nationstar Mortg.,

16

LLC, 2015 WL 11422301, at *4 (N.D. Ga. November 25, 2015) ("So-called 'vapor money' claims are based on the notion that a borrower's repayment obligation is negated, because of the allegation that the lending bank did not fund the loan through actual deposits of legal tender but rather 'created' the appearance of a loan through bookkeeping entries."), report and recommendation adopted as modified by 2015 WL 11492547 (N.D. Ga. December 16, 2015)).

Under Georgia law, in order to establish a claim for conversion, "a plaintiff must show 'title to the property [in the plaintiff], possession by the defendant, demand for possession, and refusal to surrender the property, or an actual conversion prior to the filing of the suit.'" Powell v. Bank of America, N.A., 2014 WL 2118821, at *3 (N.D. Ga. May 21, 2014) (quoting Habel v. Tavormina, 266 Ga. App. 613, 615, 597 S.E.2d 645, 648 (Ga. Ct. App. 2004)). Notably, under Georgia law, Plaintiff is precluded from asserting a claim for conversion of real property. Old Atlanta Road, LLC v. Specialized Loan Serv., LLC, 2015 WL 570753, at *9 (N.D. Ga. January 26, 2015) (citations omitted). Therefore, to the extent Plaintiff's fraudulent conversion claim is based upon foreclosure of real property, it must be dismissed as a matter of law.

In support of Count II alleging mortgage servicing fraud, Plaintiff challenges the use and roles of third-party servicers by mortgage lenders generally as well as the post-

closing practices employed by servicers.[9]  [Compl. ¶¶ 63–81].  More specifically, Plaintiff complains that, *as a practice*, servicers manipulate the accounting of loans to make it appear as if the loan is in default, refuse to accept properly tendered payments, charge fees for collection letters, inspections and BPOs, charge excessive interest, and place payments into suspense accounts without cause.  [Compl. ¶ 64].  Plaintiff complains about the lack of incentive for servicers to assist borrowers with staying current on monthly payments and the absence of risk undertaken by the servicer contrasted with the vulnerable position of the borrower / homeowner.  [Compl. ¶¶ 66, 72].  However, the Plaintiff does not identify any specific action taken by PennyMac *in connection with her Loan* that she contends amounts to fraud.  The Complaint purports "to explain to the Court how the Defendant is committing servicing fraud" but then reads like an editorial on the adverse impact of servicers in the mortgage industry, minus any related facts.  [Compl. ¶ 63].  Similarly, beyond the foreclosure sale itself, Plaintiff does not allege any specific harm allegedly caused by PennyMac during the time it serviced her Loan.

---

[9] The Complaint purports "to explain to the Court how the Defendant is committing servicing fraud" and then states that "servicing fraud is the main fact in Plaintiff's case."  [Compl. ¶ 81].

18

With respect to Count V, alleging fraud and / or attempted fraud, Plaintiff asserts that PennyMac "misrepresented the true balance of the Loan and their true status as servicer not the true creditor of the Loan, with knowledge or reckless disregard of the statements' falsity, in each of the Monthly Statements, Notices of Default, Payoff Letter and Notice(s) of Foreclosure." [Compl. ¶ 93]. Plaintiff next alleges that she relied upon the representations by continuing to deal with Defendant as [her] lender, including directing [her] modification application(s)."[10] [Compl. ¶ 94]. However, Plaintiff does not identify in Count V (or in any of her fraud-based claims) specifically who made the purported representations, what the content of the alleged representations were, or when and where any alleged representations were made. Given these deficiencies, Plaintiff's Complaint does not satisfy Rule 9(b)'s pleading requirement. See Sampson v. Washington Mutual Bank, 453 Fed. Appx. 863, 866–67 (11th Cir. 2011) (dismissal of fraud claim affirmed where complaint did not allege who made the misrepresentations or the content of the same or when and where the misrepresentations occurred); see also Matthews v. JPMorgan Chase Bank, N.A., 2013

---

[10] The Complaint does not allege elsewhere that Plaintiff Brandenstein ever applied for any loan modification. This allegation is one indication that Plaintiff has likely attempted to adapt an internet form complaint offered to *pro se* litigants to fit the facts of her case.

WL 12106937, at *6 (N.D. Ga. January 14, 2013), <u>report and recommendation adopted by</u> 2013 WL 12110528 (N.D. Ga. February 20, 2013) (dismissing fraud claim due to failure of plaintiff to allege the "who, what, when, where & how" in complaint).

In addition, to the extent Plaintiff Brandenstein's Complaint could be construed to allege a negligence claim, Georgia does not recognize an independent cause of action for negligent mortgage servicing. <u>See</u> <u>Anderson v. Deutsche Bank Nat'l Trust Co.</u>, 2012 WL 3756512, at *9 (N.D. Ga. August 6, 2012) (rejecting plaintiff-borrower's claim that defendant had a duty to service the mortgage loan in good faith pursuant to provision within the Georgia Residential Mortgage Act governing the conduct of mortgage brokers or lenders in connection with the loan application, renewal, and refinancing, <u>see</u> O.C.G.A. § 7-1-1013), <u>report and recommendation adopted by</u> 2012 WL 3756435 (N.D. Ga. August 27, 2012). In fact, Georgia does not recognize any fiduciary duty in the mortgagor-mortgagee context. <u>Id.</u> (citations omitted). And Plaintiff fails to allege any duty owed to her by PennyMac or any special circumstances that could arguably support an exception to the general rule that no such duty exists. [Doc. 3-1 at 9–10]. In sum, Plaintiff's Complaint lists her fraud-based causes of action but does not explain how any of her sparse factual allegations support her particular claims. <u>See</u> <u>Powell</u>, 2014 WL 2118821, at *4 (summarily dismissing plaintiff's tort claims for fraud, fraudulent inducement, and tortious

20

interference with contract given plaintiff's failure to explain how facts allegedly supported her causes of action).

The Court respectfully **RECOMMENDS** that Plaintiff's fraudulent conversion claim alleged in Count I, Plaintiff's mortgage servicing fraud claim alleged in Count II, and Plaintiff's fraud or attempted fraud claim alleged in Count V be **DISMISSED WITH PREJUDICE**.

### C. Declaratory Judgment Action (Credit Default Swap)

Plaintiff Brandenstein also seeks a declaratory judgment finding that PennyMac is not entitled to the remedy of non-judicial foreclosure because the Loan was backed by a credit default swap agreement ("CDSA") such that when Plaintiff allegedly defaulted the true owner of the Loan was made whole by the CDSA.[11]  [Compl. ¶¶ 85–86].  Defendant correctly points out that Plaintiff's Complaint does not allege any specific facts concerning a CDS agreement and that Plaintiff would not have been a party (or third-party beneficiary) to any CDS agreement and, therefore, would lack standing to challenge any CDS arrangement.  [Doc. 3-1 at 7–8, 17–19].  Defendant

---

[11] Plaintiff's Complaint defines a credit default swap agreement as "a type of contract that offers a guarantee against the non-payment of a loan . . . [whereby] the seller of the swap will pay the buyer in the case of a credit event (default) by a third-party.  If no default occurs, the seller of the swap will have collected a premium from the buyer." [Compl. ¶ 83 & n.13].

further suggests that any legal challenge was rendered moot by the July 5, 2017, foreclosure sale. [Doc. 3-1 at 7–8, 17–19 (citing 28 U.S.C. § 2201(a))].

Because foreclosure has already occurred, declaratory relief is not available to Plaintiff Brandenstein. The Declaratory Judgment Act, which only in the "case of actual controversy[,]" is found at Title 28, United States Code, Section 2201, and provides that:

> In a case of actual controversy within its jurisdiction . . . as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). Under Georgia law, it is the moving party's burden to establish that a declaratory judgment "'is necessary to relieve himself of the risk of taking some future action that, without direction, would jeopardize his interests.'" Milani v. One West Bank FSB, 491 Fed. Appx. 977, 979 (11th Cir. 2012) (quoting Porter v. Houghton, 273 Ga. 407, 408, 542 S.E.2d 491, 492 (2001)) (declaratory judgment unavailable to declare rights relative to past event such as foreclosure of property where plaintiff had already defaulted on the note); accord McColligan v. State Home Mortg., 2017 WL 3496968, at *5 (M.D. Ga. August 15, 2017) (rejecting plaintiff's

AO 72A
(Rev.8/82)

argument that defendants had no authority to foreclose based upon alleged deficiencies in the securitization of mortgage). In <u>Milani</u>, the Eleventh Circuit explained that "[n]o uncertainty exists about any future action by Plaintiff . . . [given that] Plaintiff has already defaulted on the pertinent note." <u>Milani</u>, 491 Fed. Appx. at 979. Such is the case here; there are no future actions of Plaintiff Brandenstein to be affected by declaration of rights. <u>See</u> <u>Winston</u>, 2017 WL 4356918, at *4–5 (applying <u>Milani</u> and dismissing plaintiff's claim for declaratory relief where defendant had already initiated foreclosure proceedings, finding "[n]o uncertainty exists about any future action by Plaintiff"). Declaratory judgment is not available to Plaintiff Brandenstein.

Significantly, Plaintiff's credit default swap argument is merely duplicative of her fraud-based claims and another attempt to contest foreclosure. In short, any mechanism employed by the lender to protect itself from loss in the event of the borrower's default simply does not alter the Plaintiff's legal obligation to make her mortgage loan payments in order to avoid foreclosure and Plaintiff does not allege sufficient facts to show that any CDS payment fulfilled her obligations under the Loan. <u>See, e.g.</u>, <u>Roberts v. CitiMortgage, Inc.</u>, 2015 WL 11549383, at *5 (N.D. Ga. May 1, 2015) (listing cases rejecting credit default swap arguments), <u>case voluntarily dismissed after issuance of report and recommendation</u> (citing <u>Shaver v. Barrett Daffin</u>

23

Frappier Turner & Engel, LLP, 593 Fed. Appx. 265, 272 (5th Cir. 2014) ("holding that the plaintiffs failed to plausibly allege how the receipt of credit default payments or third-party insurance payments without an accompanying decrease to the loan balance was unjust enrichment and noting that courts reject similar claims based on a lender's receipt of funds from credit default swaps and other comparable sources")). And federal courts including this one have consistently rejected credit default swap arguments advanced by borrowers who have defaulted on their mortgage loans. See Clark v. Ocwen Loan Servicing, 2015 WL 11438602, at *9 (N.D. Ga. July 30, 2015) (finding that any credit default swap agreement "does not alter Plaintiff's obligations under the Security Deed" because "Plaintiff does not allege that he is a party to the agreement, that the secured creditor agreed to waive Plaintiff's obligation under the Security Deed, or that such payments constitutes performance on behalf of the Plaintiff"), case voluntarily dismissed after issuance of report and recommendation; accord Hamilton v. Wells Fargo Bank, N.A., 2013 WL 12109441, at *5 (N.D. Ga. March 26, 2013) (rejecting declaratory judgment claim based upon plaintiff's theory that credit default swap agreement made the lender whole such that the remedy of non-judicial foreclosure was no longer available to lender), report and recommendation adopted by 2013 WL 12110533 (N.D. Ga. April 24, 2013).

AO 72A
(Rev.8/82)

Accordingly, the Court will respectfully **RECOMMEND** that Plaintiff's request for declaratory judgment within Count IV be **DISMISSED WITH PREJUDICE**.

### D.      Unfair and/or Deceptive Business Practices Act

In Count IV, Plaintiff Brandenstein alleges unfair and deceptive business practices in violation of the Georgia Fair Business Practices Act of 1975 ("GFBPA"), O.C.G.A. § 10-1-3, *et seq*.  Plaintiff appears to also allege violation of Section 1962d of the Fair Debt Collection Practices Act ("FDCPA") either as a means of violating GFBPA or as a stand-alone claim.

### 1.      GFBPA

With respect to alleged violation of the GFBPA, the GFBPA does not apply to residential mortgage loan transactions or mortgage lending or servicing.  Stewart, 331 Ga. App. at 640 & n.4, 770 S.E. 2d at 898 (citations omitted); and see Cook v. Citibank, N.A., 2013 WL 12106935, at *7 (N.D. Ga. March 20, 2013), report and recommendation adopted by 2013 WL 12109759 (N.D. Ga. July 16, 2013).  The only factual allegation concerning her claim that PennyMac violated the Georgia Fair Business Practices Act is that PennyMac charged her false servicing fees.  [Compl. ¶ 89].  Plaintiff does not identify what type of servicing fees that she contends were false, when the fees were assessed, or the amount of alleged damage, and likely her assertion

is premised on the notion that she should not have been charged any servicing fees. Plaintiff's allegations are insufficient.  See Cooke, 2011 WL 4975386, at *3.

Accordingly, the Court will respectfully **RECOMMEND** that Plaintiff's claim alleging violation of the GFBPA be **DISMISSED WITH PREJUDICE**.

### 2.    FDCPA

Although not set out in the Complaint as a separate cause of action, Plaintiff next alleges that PennyMac violated Section 1692d of the FDCPA with the alleged attempt to collect on a debt and foreclose on the Property.  [Compl. ¶¶ 89–91].  The Defendant argues that Plaintiff has not alleged facts that plausibly show that Defendant is a debt collector for purposes of the FDCPA.  [Doc. 3-1 at 11–12].   The Court agrees.

Title 15, United States Code, Section 1692d provides that:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

26

15 U.S.C.A. § 1692d.[12] "Banned conduct includes the 'use of violence,' the 'use of obscene or profane language,' and repeated phone calls intended to annoy or harass 'any person at the called number.'" Miljkovic v. Shafritz and Dinkin, P.A., 791 F.3d 1291, 1305 (11th Cir. 2015) (quoting § 1692d(1)-(6)).

In order to state a plausible FDCPA claim, Plaintiff must allege the following: (1) that she has been the object of collection activity arising from a consumer debt; (2) that the defendant attempting to collect the debt qualifies as a "debt collector" under the statute; (3) that the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA. See Elrod v. Bank of America, N.A., 2015 WL 12843876, at *8 (N.D. Ga. October 28, 2015), report and recommendation adopted by 2015 WL 12856446 (N.D. Ga. November 17, 2015).

The Court agrees that Plaintiff has failed to allege facts showing that Defendant PennyMac meets the statutory definition of "debt collector." As a threshold

---

[12] The only subsections of Section 1692d of any possible relevance here are:

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

27

requirement, in order to be liable for a violation of the FDCPA, the Defendant must be a "debt collector" within the meaning of the FDCPA.  Heintz v. Jenkins, 115 S. Ct. 1489, 1490–91 (1995); accord Thomas v. US Bank Nat'l Ass'n, 675 Fed. Appx. 892, 898 (11th Cir. 2017) (citations omitted).  The Act defines "debt collector" to mean "[1] any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or [2] who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  Davidson v. Capital One Bank (USA), N.A., 797 F.3d 1309, 1313 (11th Cir. 2015) (quoting 15 U.S.C. § 1692a(6)).  The definition also explicitly excludes "any person collecting or attempting to collect any debt due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person."  15 U.S.C. § 1692a(6)(F)(iii).  "Entities falling within this exclusion include mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing."  Davidson, 797 F.3d at 1314 n.4 (citation and internal quotation marks omitted); accord Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985) (FDCPA excepts loan servicers from its definition of "debt collector" "as long as the debt was not in default at the time it was assigned");

28

see also Underhill v. Bank of America, N.A., 2014 WL 587868, at *11 (N.D. Ga. February 14, 2014) (observing that "it is well-established" that the FDCPA does not apply to creditors and mortgage servicers and that Section 1692a(6)(F) "'has been interpreted by courts to mean that mortgage servicers are not covered by the FDCPA if they began servicing the loan at a time when it was not in default'") (quoting Stroman v. Bank of America Corp., 852 F. Supp. 2d 1366, 1375 (N.D. Ga. 2012)).

Here, Plaintiff's failure to allege that Defendant PennyMac is a debt collector for purposes of the FDCPA and failure to include any facts in support of this critical element, is sufficient grounds for dismissal. See Thomas, 675 Fed. Appx. at 898 (affirming dismissal of FDCPA claim where complaint made no allegations concerning defendant's principal business being the collection of debts and no allegations that defendant regularly collects or attempts to collect debts owed to another); and see Underhill, 2014 WL 587868 at **11–13 (dismissing FDCPA claim where no factual allegations that defendant was a "debt collector" were pleaded). Further, while unclear from Plaintiff's Complaint, as long as PennyMac began servicing the Loan prior to Plaintiff's default, PennyMac, as the Loan servicer, would be excluded from the statutory definition of debt collector and her FDCPA claim would fail as a matter of law. See Johns v. Wells Fargo Bank, N.A., 2015 WL 143753, at *5 (S.D. Ala. January

29

12, 2015) (collecting cases applying Section 1692a(6)(F)(iii) exclusion to loan servicers to determine when servicers fall within the FDCPA's statutory definition of "debt collector").

Additionally, the only factual allegation in support of her FDCPA claim is that Defendant knowingly and intentionally engaged in harassing, oppressive, and / or abusive conduct toward Plaintiff through (unspecified) phone calls and correspondence via (unidentified) persons aimed at collecting on the debt (i.e., Loan) and subsequently relating to foreclosure. [Compl. ¶¶ 90–91]. Neither of these vague allegations is sufficient to sustain a claim. See Johnson v. HSBC N.A. Nat'l Bank, 2013 WL 12101064, at *2 (N.D. Ga. April 15, 2013) (dismissing FDCPA claim where plaintiff did not allege that defendant is a debt collector or allege facts to show that defendant violated the FDCPA), report and recommendation adopted by 2013 WL 12101066 (N.D. Ga. May 29, 2013). In order to fall within the protection of Section 1692d, any telephone calls made by PennyMac to Brandenstein would have to have occurred "repeatedly or continuously with intent to annoy, abuse, or harass . . . [or have been placed] without meaningful disclosure of the caller's identity." 15 U.S.C. §§ 1692d(5) and (6).

AO 72A
(Rev.8/82)

And even if Plaintiff were to overcome these hurdles to stating a claim under the FDCPA, the essence of Brandenstein's claim is that BANA, the foreclosing entity and non-party, did not actually have the right to foreclose and that PennyMac's servicing of the Loan therefore constituted a falsehood or a deceptive or misleading practice – a legal position that wholly lacks merit as discussed, *supra*. See, e.g., Silvestar v. Nationwide Mortg., LLC, 2016 WL 5339736, at *5 (N.D. Ga. July 12, 2016) (recommending dismissal of FDCPA claim where "the only falsehood that [plaintiff] alleged" was that defendants did not have the right to foreclose), report and recommendation adopted by 2016 WL 5660348 (N.D. Ga. August 25, 2016); see also Warren v. Countrywide Home Loans, Inc., 342 Fed. Appx. 458, 460 (11th Cir. 2009) ("foreclosing on a security interest is not debt collection activity for purposes of [15 U.S.C.] § 1692g"); and see Smith v. Wells Fargo Bank, N.A., 2017 WL 2857723, at *4 (M.D. Ala. April 12, 2017) (applying Warren and dismissing FDCPA claim brought against loan servicer), report and recommendation adopted by 2017 WL 2838083 (M.D. Ala. June 30, 2017).

For these reasons, the Court will respectfully **RECOMMEND** that Plaintiff's Count IV alleging of the FDCPA be **DISMISSED WITH PREJUDICE**.

31

### E.    Intentional Infliction of Emotional Distress

Plaintiff also alleges that Defendant PennyMac engaged in the intentional infliction of emotional distress ("IIED") "by attempting to take Plaintiff's real property through foreclosure" without a legal right to do so.  [Compl. ¶ 97].  Plaintiff alleges that PennyMac's actions have caused her emotional distress including, but not limited to, "extreme humiliation, anxiety[,] and loss of sleep."[13]  [Compl. ¶ 97].

Under Georgia law, the tort of IIED requires proof of the following:  "'1) that defendant's behavior was wilful and wanton or intentionally directed to harming plaintiff; 2) that the actions of defendant were such as would naturally humiliate, embarrass, frighten, or outrage the plaintiff; [and] 3) that conduct caused mental suffering or wounded feelings or emotional upset or distress to plaintiff.'"  Malphurs v. Cooling Towers Sys. Inc., ___ Fed. Appx. ___, ___, 2017 WL 4118331, at *4 (11th Cir. 2017) (quoting Se. Sec. Ins. Co. v. Hotle, 222 Ga. App. 161, 163, 473 S.E.2d 256, 259–60 (1996)).

In order to satisfy the second element, "[t]he conduct complained of must have been extreme and outrageous."  Yarbray v. Southern Bell Telephone & Telegraph Co.,

---

[13] In addition, Plaintiff alleges generally that she has suffered "mental anguish" in connection with her other causes of action.  [Compl. ¶¶ 87, 91, 95].

32

261 Ga. 703, 706, 409 S.E.2d 835, 837 (1991) (citations omitted). As explained in the

Restatement (Second) of Torts,

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

Restatement (Second) of Torts § 46 (1965) (liability does not extend to "mere insults,

indignities, threats, annoyances, petty oppressions, or other trivialities"); accord

Norfolk Southern Ry. Co. v. Spence, 210 Ga. App. 284, 285, 435 S.E.2d 680, 681

(1993) (recognizing Section 46 of the Restatement (Second) of Torts as "the general

rule prevailing in the United States") (citations omitted). "Whether a claim rises to the

requisite level of outrageousness and egregiousness . . . is a question of law." Yarbray,

261 Ga. at 706, 409 S.E.2d at 837 (citations omitted).

And "[a]s to the third element, to recover for emotional distress Georgia law

requires that 'a plaintiff show, at the very least, that physical and/or mental

manifestations of that distress required her to seek medical or psychological

33

treatment.'" <u>Malphurs</u>, 2017 WL 4118331, at *4 (quoting <u>Howerton v. Harbin Clinic, LLC</u>, 333 Ga. App. 191, 776 S.E.2d 288, 301 (2015)).

Accepting Plaintiff's factual allegations concerning PennyMac's servicing of her Loan as true, Plaintiff's Complaint fails to state a claim for IIED as a matter of law because the nature of the conduct Plaintiff complains about, namely, the foreclosure of property, does not amount to extreme and outrageous conduct. [Doc. 3-1 at 15–17]. <u>See</u> <u>Echeverria v. BAC Home Loans Servicing, LP</u>, 523 Fed. Appx. 675, 677 (11th Cir. 2013) (affirming Rule 12(b)(6) dismissal of plaintiff's IIED claim based upon holder of mortgage loan and loan servicer's conduct, including "not providing the plaintiffs with correct information concerning their mortgage loan, refusing to modify that loan, losing papers and documents, and threatening foreclosure" and finding that conduct was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency") (citation and internal quotation marks omitted); <u>see also</u> <u>Lewis v. PNC Bank, N.A.</u>, 2013 WL 6817090, at *7 (N.D. Ga. December 26, 2013) (A "lawful foreclosure, as emotionally distressing as that may be, is not extreme and outrageous behavior that would give rise to a claim for [IIED]."); <u>and see</u> <u>Winston</u>, 2017 WL 4356918, at *4 (same). In addition, Plaintiff does not allege any facts in

support of the third element in that she does not allege that she sought medical or psychological treatment as a result of PennyMac's actions.

For these reasons, the Court will respectfully **RECOMMEND** that Plaintiff's IIED claim, Count VI, be **DISMISSED WITH PREJUDICE**.

### F.    TILA

Although not alleged as a cause of action and without citing to any particular provision of the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq*., Plaintiff appears to allege that Defendant PennyMac also violated TILA.  Here, the only factual allegation within Plaintiff's Complaint that arguably is in support of her TILA claim is the contention that she sent to PennyMac "a request for disclosure, rescission, and validation of [the] debt" and that PennyMac "failed to comply with its legal obligations under TILA[.]"  [Compl. ¶¶ 10, 12].  Plaintiff's conclusory allegation that PennyMac "failed to comply" is insufficient to survive Rule 12(b)(6).  See, e.g., Levine v. EverBank Fin. Corp., 2017 WL 2903357, at **5–6 (N.D. Ga. February 10, 2017) (observing that plaintiff's complaint failed to meet minimal pleading standards required of a *pro se* plaintiff where complaint made one passing reference to TILA in a heading but lacked allegations or facts describing any action by any defendant and

how any particular TILA requirement was violated and recommending dismissal), report and recommendation adopted by 2017 WL 3000043 (N.D. Ga. March 9, 2017).

The undersigned notes generally that Section 1641(g) of TILA requires "that a new owner or assignee of a mortgage loan inform the borrower that her creditor has changed."[14] Id. Although Plaintiff alleges in her Complaint that PennyMac also "presented itself to [her] as the owner of the Loan, the Noteholder[,]" see Compl. ¶ 9, the record makes clear that Defendant PennyMac was never an owner of Plaintiff Brandenstein's Loan. See, e.g., Griffin Industries, Inc., 496 F.3d at 1205–06 (exhibits attached to plaintiff's complaint disproved plaintiff's general and conclusory allegations as to essential elements of causes of action). Therefore, TILA does not apply to Defendant PennyMac. See Seeney v. Nationstar Mortg., LLC, 2013 WL

---

[14] Section 1641(g) provides as follows:

[N]ot later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, **the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer**, including – (A) the identity, address, [and] telephone number of the new creditor; (B) the date of transfer; (C) how to reach an agent or party having authority to act on behalf of the new creditor; (D) the location of the place where transfer of ownership of the debt is recorded; and (E) any other relevant information regarding the new creditor.

15 U.S.C. § 1641(g) (emphasis added).

AO 72A
(Rev.8/82)

6499359, at *6 (N.D. Ga. December 11, 2013) ("[S]ervicers have no liability for violations of TILA unless they are the current or former owner of the loan.") (citation and internal quotation marks omitted).

In addition, Section 1635 speaks to an obligor's right of rescission in connection with certain types of transactions but explicitly exempts residential mortgage transactions as defined under TILA.[15]  See 15 U.S.C. §§ 1635(e)(1), 1602(x); Infante v. Bank of America Corp., 468 Fed. Appx. 918, 920–21 (11th Cir. 2012) (Applying former subsection 1602(w) and stating that, "The TILA-based right to rescission does not apply to a 'residential mortgage transaction.'") (quoting 15 U.S.C. § 1635(e)(1); and citing 12 C.F.R. § 226.23(f)(1)); see also Frazile v. EMC Mortg. Corp., 382 Fed. Appx. 833, 837 (11th Cir. 2010) (same).

For these reasons, the undersigned respectfully **RECOMMENDS** that Plaintiff's TILA claim be **DISMISSED WITH PREJUDICE**.

---

[15] Pursuant to TILA,

The term 'residential mortgage transaction' means a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling.

15 U.S.C. § 1602(x) (as amended effective July 21, 2010).

37

## G.    RESPA

While not identified as a separate claim, Plaintiff, without identifying any specific provision or violation of RESPA, conclusorily alleges that she sent PennyMac a "qualified written request" under RESPA on May 12, 2017.  [Compl. ¶ 10].

The RESPA imposes certain requirements on servicers of federally-related mortgage loans, including responding to inquiries and providing certain notices to borrowers.[16]  "If the servicer does not comply with RESPA's deadlines, the borrower can recover actual damages from the failure to communicate, but the borrower is limited to actual damages unless there is a pattern or practice of noncompliance." Bivins v. Nationstar Mortg., LLC, 2016 WL 3855549, at *5 (N.D. Ga. July 14, 2016) (quoting Marks v. PHH Mortg. Corp., 2011 WL 5439164, at *3 (M.D. Ga. Nov. 9, 2011) (citing 12 U.S.C. § 2605(f))) (internal quotation marks omitted).  "To show actual damages, a plaintiff must 'demonstrate that [d]efendant's breach proximately caused the alleged damages.'"  Id. (quoting Russell v. Nationstar Mortg., LLC, 2015

---

[16] Under RESPA, the term "servicer" is defined as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)" and "servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower[.]" 12 U.S.C. §§ 2605(i)(2), 2605(i)(3).

AO 72A
(Rev.8/82)

WL 5029346, at *6 (S.D. Fla. Aug. 26, 2015)).  "An allegation of damages is a necessary element of a RESPA claim."  Id. (citing Frazile, 382 Fed. Appx. at 836).

One of the obligations RESPA imposes on servicers is to respond to the inquiries or QWRs of borrowers in a timely fashion (within the time frame as prescribed by statute).  See Smith v. Bank of America Home Loans, 968 F. Supp. 2d 1159, 1170 (M.D. Fla. 2013) (dismissing RESPA claim because purported QWRs did not relate to servicing of the loan); see also Malally v. BAC Home Loan Servicing, LLC, 2010 WL 5140626, at *7 (N.D. Ga. October 8, 2010), report and recommendation adopted by 2010 WL 5140031 (N.D. Ga. December 13, 2010). However, to trigger a servicer's duty to respond, a QWR "must meet several statutory requirements[,]" including, requesting "information relating to the servicing of a loan[,]" § 2605(e)(1)(A), providing "sufficient information for the servicer to identify the name and account of the borrower[,]" § 2605(e)(1)(B)(i), and setting forth either "a statement of the reasons for the borrower's belief, to the extent applicable, that the account is in error or provide sufficient detail to the servicer regarding other information sought by the borrower[,]" § 2605(e)(1)(B)(ii).  Williams v. Wells Fargo Bank, N.A., Inc., 2010 WL 1463521, at *2 (N.D. Cal. April 13, 2010); see also McDaniel v. Wells Fargo Bank, N.A., 2016 WL 1071101, at *6 (N.D. Ga. March 17, 2016) (same).

39

Plaintiff has not sufficiently alleged a violation of RESPA. "To state a claim for violation of RESPA § 2605(e), [a] plaintiff[ ] must allege facts showing that: (1) defendant is a loan servicer, (2) plaintiff[ ] sent defendant a valid QWR, (3) defendant failed to adequately respond within the . . . statutory period, and (4) plaintiff[ ] [is] entitled to actual or statutory damages." Smith, 968 F. Supp. 2d at 1170 (citing 12 U.S.C. § 2605); and see Frazile, 382 Fed. Appx. at 836.

Here, Plaintiff does not allege facts to establish that the correspondence she claims to have sent PennyMac on May 12, 2017, constituted a valid QWR or met the statutory definition of a QWR. [Compl.]. Although Plaintiff asserts that a request for information was sent to Defendant on May 12, 2017, she does not adequately describe the information or documents sought or the questions posed therein; she does not set forth the contents of the communication nor does she attach the communication to the Complaint. See, e.g., Tonea v. Bank of America, N.A., 6 F. Supp. 3d 1331, 1346 (N.D. Ga. 2014) (noting that the plaintiff only alleged in conclusory fashion that a QWR was mailed to the defendant without an adequate response and finding that the plaintiff's failure to "provide any allegations about the content of his mailing" and to "attach copies of the mailing to the complaint" is insufficient "to survive a motion to dismiss"); Lucero v. Diversified Investments Inc., 2010 WL 3463607, at *4 (S.D. Cal.

August 31, 2010) ("because [the plaintiffs] do not allege the contents of the QWR or attach it to their Complaint, it is unclear whether Plaintiffs included enough information for the servicer to identify them, or asked for information covered by 12 U.S.C. § 2605"); Carrillo v. Bank of New York, 2009 WL 5708925, at *4 (S.D. Fla. December 22, 2009) (§ 2605(e) claim failed to state a cause of action because, among other deficiencies, the complaint "does not indicate the subject matter of the written correspondence"); see also Costine v. BAC Home Loans, 946 F. Supp. 2d 1224, 1232–33 (N.D. Ala. 2013) ("It is not enough to simply use the words 'qualified written request' somewhere in the Complaint. Rather, Plaintiff[] must plead facts demonstrating that a written request was actually made, such as by . . . describing its contents showing they satisfied the requirements enumerated in 12 U.S.C. § 2605(e)(1)(B). Indeed, [P]laintiff[] must make specific factual allegations showing that . . . such request included the detail necessary to qualify under the statute.") (citations omitted).

Additionally, Plaintiff has not pled that she suffered any actual damages as a result of the alleged failure to respond to her purported QWR. Similarly, Plaintiff has not pled that Defendant engaged in a pattern or practice of not responding to QWRs. As previously stated, either actual damages or a pattern or practice of noncompliance

is necessary for a plaintiff to recover on a RESPA claim. 12 U.S.C. § 2605(f); and see Frazile, 382 Fed. Appx. at 836 ("an allegation [of either actual or statutory damages] is a necessary element of any claim under § 2605"); see also Lage v. Ocwen Loan Servicing LLC, 145 F. Supp. 3d 1172, 1192–93 (S.D. Fla. November 19, 2015) ("a plaintiff seeking to recover under RESPA must show that he or she 'suffered actual damages or is entitled to statutory damages'" up to $2,000) (citation omitted). And "'a plaintiff must also allege a causal link between the claimed damages and the defendant's alleged RESPA violation.'" Davis v. Bank of America, N.A., 2014 WL 5090692, at *8 (N.D. Ala. October 9, 2014) (citation omitted); and see McDaniel, 2016 WL 1071101, at *6 ("To show actual damages, a plaintiff must 'demonstrate that [d]efendant's breach proximately caused the alleged damages.'") (citation omitted). Plaintiff's Complaint fails to plausibly allege these essential RESPA § 2605(e) criteria.

Thus, Plaintiff Brandenstein does not allege facts that plausibly support the second requirement of having sent a valid QWR or that she suffered damages. Because the statutory requirements of § 2605(e) are mandatory, Plaintiff Brandenstein's failure to meet this requirement is fatal to her purported RESPA claim.

For these reasons, the undersigned respectfully **RECOMMENDS** that Plaintiff's RESPA claim be **DISMISSED WITH PREJUDICE**.

42

### H.  Pretrial Discovery

Finally, Plaintiff Brandenstein is not entitled to pretrial discovery given the deficiencies within her Complaint identified herein.  See Lopez v. United States, 656 Fed. Appx. 957, 963 (11th Cir. 2016) (affirming denial of plaintiff's request for discovery where complaint did not survive Rule 12(b)(6)).

### IV.  Conclusion

Based on the foregoing reasons and cited authority, the undersigned **RESPECTFULLY RECOMMENDS** the following:

1)  That Plaintiff's fraudulent conversion claim alleged in Count I, Plaintiff's mortgage servicing fraud claim alleged in Count II, and her fraud or attempted fraud claim alleged in Count V all be **DISMISSED WITH PREJUDICE**;

2)  That Plaintiff's request for declaratory judgment within Count III be **DISMISSED WITH PREJUDICE**;

3)  That Plaintiff's claim within Count IV alleging violation of the GFBPA be **DISMISSED WITH PREJUDICE**;

4)  That Plaintiff's claim within Count IV alleging of the FDCPA be **DISMISSED WITH PREJUDICE**;

5)  That Plaintiff's IIED claim alleged in Count VI be **DISMISSED WITH**

43

**PREJUDICE**;

6)   That Plaintiff's TILA claim be **DISMISSED WITH PREJUDICE**; and

7)   That Plaintiff's RESPA claim be **DISMISSED WITH PREJUDICE**; and

**IT IS HEREBY ORDERED** that Plaintiff's request for discovery is **DENIED**.

**SO ORDERED AND RECOMMENDED THIS** 6th day of November, 2017.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)