# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| LORI G. BRANDENSTEIN,<br><br>        Plaintiff,<br><br>v.<br><br>PENNYMAC LOAN SERVICES, LLC,<br><br>        Defendant. | 1:17-cv-2712-WSD |

## OPINION AND ORDER

This matter is before the Court on Magistrate Judge Janet F. King's Final Report and Recommendation [7] ("Final R&R") granting Defendant Pennymac Loan Services, LLC's ("Defendant") Motion to Dismiss Plaintiff's Verified Complaint [3] (the "Motion"). Plaintiff Lori G. Brandenstein ("Plaintiff") does not oppose the Motion or object to the Final R&R. The Court finds no plain error in the Final R&R, and therefore adopts the recommendations of Magistrate Judge King.

## I. BACKGROUND[1]

On June 19, 2017, Plaintiff, proceeding *pro se*, filed her Complaint [1.1] challenging Defendant's conduct relating to the July 5, 2017, foreclosure of Plaintiff's former residence, real property located at 2244 Josephine Court, Marietta, Georgia, 30062 ("Property"). Defendant was the servicer of Plaintiff's mortgage loan on the Property. ([1.1] ¶ 8).

### A. The Foreclosure of Plaintiff's Property

On January 30, 2010, Plaintiff Brandenstein, along with Richard W. Brandenstein ("Mr. Brandenstein"), who is not a complainant or party to the instant suit, obtained a mortgage loan from First Option Mortgage, LLC ("First Option" or "Lender"), in the principal amount of $213,776.00 ("Loan"). ([1.1] ¶ 6). In connection with and to secure payment on the Loan, Plaintiff and Mr. Brandenstein executed a Security Deed in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for First Option, and its successors and assigns. ([1.1] ¶ 7; see also Security Deed [1.3]). The Security Deed was recorded on February 15, 2010, in Deed Book 14754, Pages 4296–4307

---

[1] The Court recites facts from the Final R&R and the record. The parties have not objected to any facts in the Final R&R, and the Court finds no plain error in them. The Court thus adopts the facts set out in the R&R, including those that it judicially noticed. See Garvey v. Vaughn, 9993 F.2d 776, 779, n.9 (11th Cir. 1993).

of the Cobb County, Georgia, records. ([1.3]).

On October 29, 2014, the Security Deed was assigned to Bank of America, N.A. ("BANA") by MERS. (Assignment [3.2]; <u>see also</u> [1.1] ¶ 7). The assignment was recorded on November 19, 2014, in Deed Book 15199, Pages 4869-70 of the Cobb County, Georgia records. ([3.2])

On or about May 2, 2017, as a result of Plaintiff's alleged default on the Loan, the law firm of Rubin Lublin, LLC, on behalf of Defendant, advertised its first Notice of Sale Under Power ("Notice") of Plaintiff's Property to occur on July 5, 2017. ([1.1] ¶ 8). Plaintiff alleges the Notice did not identify the holder of the Security Deed and identified Defendant as the loan servicer. (<u>Id.</u>). On May 12, 2017, apparently operating under the assumption that Defendant still acted as the loan servicer, Plaintiff sent Defendant a request for disclosure, rescission, and validation of debt under Truth in Lending Act ("TILA") and a "qualified written request" under Real Estate Settlement Procedures Act ("RESPA"). ([1.1] ¶ 10). According to Plaintiff, Defendant did not respond.

On July 5, 2017, BANA exercised its power of sale in the Security Deed and foreclosed on the Property. The Property was transferred to Arch Property Holdings, LLC, under a Deed Under Power. (Deed Under Power [4.1]). On August 20, 2017, the Deed Under Power was recorded in Deed Book 15472 at

Pages 3016-19 in the Cobb County, Georgia records.

B.      Procedural Posture

On June 19, 2017, Plaintiff filed her Complaint. In it, she identifies six causes of action, which she describes as follows: (Count 1) Fraudulent Conversion; (Count 2) Mortgage Servicing Fraud; (Count 3) Declaratory Judgment (Credit Default Swap); (Count 4) Unfair and Deceptive Trade Practices/Fair Debt Collection Practices Act; (Count 5) Fraud/Attempted Fraud; and (Count 6) Intentional Infliction of Emotional Distress ("IIED"). Plaintiff also alleges, within the Fact Section of her Complaint, violations of TILA and RESPA. ([1.1] ¶ 10-12). Plaintiff also seeks prelitigation discovery and injunctive relief.

On July 19, 2017, Defendant properly and timely removed the case pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446. (Notice of Removal [1]; see also [7] at 8, n.5). On July 26, 2017, Defendant moved to dismiss on multiple grounds, including under Rules 4(m), 9, 12(b)(6) of the Federal Rules of Civil Procedure. (Motion to Dismiss [3.1]).[2] Defendant further contends that the relief Plaintiff seeks is moot given that foreclosure has already occurred.

On November 6, 2017, the Magistrate Judge issued her Final R&R

---

[2]     Defendant has since expressly waived its service-related defense pursuant to Rule 12(b)(5) in favor of a ruling on the merits pursuant to Rule 12(b)(6).

4

recommending granting Defendant's Motion to Dismiss. No party filed objections to the Final R&R.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "assume that the factual allegations in the complaint are true and give the plaintiff[] the benefit of reasonable factual inferences." Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010). Although reasonable inferences are made in the plaintiff's favor, "'unwarranted deductions of fact' are not admitted as true." Aldana v. Del Monte Fresh Produce, N.A., 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting S. Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (1996)). The Court also is not required to accept as true conclusory allegations and legal conclusions. See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (construing Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)); see also White v. Bank of America, NA, 597 F. App'x 1015, 1018 (11th Cir. 2014) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent

dismissal.") (quoting Oxford Asset Mgmt., Ltd. V. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Mere "labels and conclusions" are insufficient. Twombly, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). This requires more than the "mere possibility of misconduct." Am. Dental, 605 F.3d at 1290 (quoting Iqbal, 556 U.S. at 679). The well-pled allegations must "nudge[] their claims across the line from conceivable to plausible." Id. at 1289 (quoting Twombly, 550 U.S. at 570).[3]

Plaintiff filed her Complaint *pro se*. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be

---

[3] Federal Rule of Civil Procedure 8(a)(2) requires the plaintiff to state "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In Twombly, the Supreme Court recognized the liberal minimal standards imposed by Federal Rule 8(a)(2) but also acknowledged that "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555.

6

held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). Nevertheless, a *pro se* plaintiff must comply with the threshold requirements of the Federal Rules of Civil Procedure. See Beckwith v. Bellsouth Telecomms. Inc., 146 F. App'x 368, 371 (11th Cir. 2005). "Even though a *pro se* complaint should be construed liberally, a *pro se* complaint still must state a claim upon which the Court can grant relief." Grigsby v. Thomas, 506 F. Supp. 2d 26, 28 (D.D.C. 2007). "[A] district court does not have license to rewrite a deficient pleading." Osahar v. U.S. Postal Serv., 297 F. App'x 863, 864 (11th Cir. 2008).

  B. <u>Magistrate Judge's Report and Recommendation</u>

  After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732 (11th Cir. 1982. A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Where, as here, no party has objected to the report and recommendation, the Court conducts only a plain error review of the record. United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983) (per curiam).

## III. DISCUSSION

### A. Plaintiff's Direct Challenge to Foreclosure

At the outset, the Magistrate Judge found that, to the extent Plaintiff challenges the foreclosure itself, Plaintiff's challenge fails. The Magistrate Judge reasoned that the underlying Loan documents reveal that BANA—not Defendant—was the foreclosing entity. ([7] at 12). The Magistrate Judge found that the Security Deed properly granted and conveyed the power of sale of the Property to BANA, and that BANA and its successors were entitled to exercise such power. (Id.). The Magistrate Judge further held that because Plaintiff does not allege that she made the tender required to have the foreclosure set aside, she is now precluded from seeking equitable relief. Heritage Creek Development Corp. v. Colonial Bank, 268 Ga. App. 369, 601 S.E.2d 842, 844-45 (2004) ("Georgia law requires a plaintiff asserting a claim of wrongful foreclosure to establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages."). The Court finds no plain error in the Magistrate Judge's findings and recommendations regarding Plaintiff's direct foreclosure challenge.

B. <u>Plaintiff's Fraud Claims</u>

Plaintiff's Complaint also asserts a number of fraud-based claims, including fraudulent conversion, mortgage servicing fraud, and fraud or attempted fraud. Defendant argues in its Motion that Plaintiff fails to meet the specificity pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. ([3.1] at 5-10); <u>see also</u> Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

To state a claim for common law fraud under Georgia law, Plaintiff must allege facts to support the following elements: "(1) false representation by defendant; (2) with scienter, or knowledge of falsity; (3) with intent to deceive plaintiff or to induce plaintiff into acting or refraining from acting; (4) on which plaintiff justifiably relied; (5) with proximate cause of damages to plaintiff." <u>WESI, LLC v. Compass Environmental, Inc.</u>, 509 F. Supp. 2d 1353, 1358 (N.D. Ga. 2007) (citations and internal quotation marks omitted).

The Magistrate Judge found that Plaintiff's "conclusory allegations of fraud do not state a claim and do not comport with the strict pleading requirements of Rule 9(b)." ([7] at 15). Specifically, the Magistrate Judge determined that Plaintiff's fraudulent conversion claim constitutes a "nonsensical challenge to the banking system, the validity of the Loan, and foreclosure of the Property."

([7] at 16). The Magistrate Judge also noted that, to the extent Plaintiff's fraudulent conversion claim is based upon the foreclosure of real property, it must be dismissed as a matter of law because Plaintiff fails to meet the elements required under Georgia law. (Id.); see also Powell v. Bank of America, N.A., 2014 WL 2118821, at *3 (N.D. Ga. May 21, 2014) (holding that a plaintiff must show title to the property, possession by the defendant, demand for possession, and refusal to surrender the property, or an actual conversion prior to the filing of the suit).

As to Plaintiff's claim alleging mortgage servicing fraud, the Magistrate Judge found that Plaintiff fails to "identify any specific action taken by [Defendant] *in connection with her Loan* that she contends amounts to fraud." ([7] at 18). The Magistrate Judge stated that "[t]he Complaint purports to 'explain to the Court how the Defendant is committing servicing fraud' but then reads like an editorial on the adverse impact of servicers in the mortgage industry, minus any related facts." (Id.; see also [1.1] ¶ 63). The Magistrate Judge concluded that, beyond the foreclosure itself, Plaintiff fails to allege any specific harm caused by Defendant during the time it serviced the Loan. ([7] at 18).

Finally, as to Plaintiff's allegations of fraud and/or attempted fraud, the Magistrate Judge found that Plaintiff failed to identify specifically who made the

"purported [fraudulent] representations, what the content of the alleged representations were, or when and where any alleged representations were made." ([7] at 19). Based on these deficiencies, the Magistrate Judge held this claim similarly failed to meet the strict requirements of Rule 9(b).

The Court finds no plain error in the Magistrate Judge's findings and recommendations regarding Plaintiff's fraud-based claims.

  C. <u>Declaratory Judgment Action (Credit Default Swap)</u>

Plaintiff seeks a declaratory judgment finding that Defendant is not entitled to the remedy of non-judicial foreclosure because the Loan was backed by a credit default swap agreement ("CDSA"), and when Plaintiff allegedly defaulted on the Loan the true owner of the Loan was made whole by the CDSA. ([1.1] ¶¶ 85-86). The Magistrate Judge found that Plaintiff's Complaint fails to allege any specific facts concerning a CDSA, and that Plaintiff would not have been a party (or third-party beneficiary) to any CDSA. ([7] at 21). The Magistrate Judge thus concluded that Plaintiff would lack standing to challenge any credit default swap arrangement. The Magistrate Judge further found that the Declaratory Judgment Act does not provide relief to Plaintiff because foreclosure has already occurred. (<u>Id.</u> at 22). The Court finds no plain error in the Magistrate Judge's findings and recommendations regarding Plaintiff's credit default swap claim.

11

D.      Unfair and/or Deceptive Business Practices Act

In Count IV, Plaintiff alleges unfair and deceptive business practices in violation of the Georgia Fair Businesses Practices Act of 1975 ("GFBPA"), O.C.G.A. § 10-1-3, et seq., and a violation of Section 1962d of the Fair Debt Collection Practices Act ("FDCPA").

The GFBPA provides a private right of action to a "party who suffers injury or damages as a result of '[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce.'" Henderson v. Gandy, 623 S.E.2d 465, 467 (Ga. 2005) (quoting O.C.G.A. § 10-1-393 et seq.); Kinzy v. Wells Fargo Bank, N.A., 1:13-CV-357-CAP, 2013 WL 12068984, at *2 (N.D. Ga. Nov. 4, 2013). To state a claim for a violation of the GFBPA, a plaintiff must allege that the defendant engaged in deceptive or unfair practices that have the potential to harm the general consuming public. Friedlander v. PDK Labs, Inc., 59 F.3d 1131, 1132 (11th Cir. 1995).

The Magistrate Judge found that the GFBPA does not apply to residential mortgage loan transactions or mortgage lending or servicing. ([7] at 25); see also Stewart v. Suntrust Mortg., Inc., 331Ga. App. 635, 640 & n.4 (Ga. App. Ct. 2015). The Magistrate Judge further determined that, even if the GFBPA applied here, Plaintiff's allegations are insufficient because Plaintiff fails to identify what type of

12

servicing fees that she contends were false, when the fees were assessed, or the amount of alleged damage. ([7] at 26).

Plaintiff next alleges Defendant violated Section 1692d of the FDCPA by allegedly attempting to collect on a debt and foreclose on the property. ([1.1] ¶¶ 89–91). Title 15, United States Code, Section 1692d provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

15 U.S.C.A. § 1692d. "Banned conduct includes the 'use of violence,' the 'use of obscene or profane language,' and repeated phone calls intended to annoy or harass 'any person at the called number.'" Miljkovic v. Shafritz and Dinkin, P.A., 791 F.3d 1291, 1305 (11th Cir. 2015) (quoting § 1692d(1)-(6)).

To state a plausible FDCPA claim, Plaintiff must allege: (1) that she has been the object of collection activity arising from a consumer debt; (2) that the defendant attempting to collect the debt qualifies as a "debt collector" under the statute; and (3) that the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA. See Elrod v. Bank of America, N.A., 2015 WL 12843876, at *8 (N.D. Ga. October 28, 2015), report and recommendation adopted by 2015 WL 12856446 (N.D. Ga. November 17, 2015).

The Magistrate Judge found that Plaintiff failed to allege facts showing that Defendant meets the statutory definition of "debt collector." ([7] at 27). The Magistrate Judge also determined that Plaintiff provided only "vague" allegations in support of her FDCPA claim, including that "Defendant knowingly and intentional engaged in harassing, oppressive, and/or abusive conduct toward Plaintiff through [unspecified] phone calls and correspondence via [unidentified] persons aimed at collecting on the debt and subsequently relating to foreclosure. ([1.1] ¶¶ 90–91). The Magistrate Judge concluded that Plaintiff's FDCPA claim thus fails for insufficiency of pleading.

The Court finds no plain error in the Magistrate Judge's findings and recommendations regarding Plaintiff's GFBPA and FDCPA claims.

E. <u>Intentional Infliction of Emotional Distress</u>

Plaintiff also contends that Defendant intentionally inflicted emotional distress "by attempting to take Plaintiff's real property through foreclosure" without a legal right to do so. ([1.1] ¶ 97). Plaintiff further alleges that Defendant's actions have caused her emotional distress, including "extreme humiliation, anxiety[,] and loss of sleep." ([1.1] ¶ 97).

Under Georgia law, the tort of IIED requires proof of the following: "'1) that defendant's behavior was willful and wanton or intentionally directed to harming

14

plaintiff; 2) that the actions of defendant were such as would naturally humiliate, embarrass, frighten, or outrage the plaintiff; [and] 3) that conduct caused mental suffering or wounded feelings or emotional upset or distress to plaintiff.'"  Se. Sec. Ins. Co. v. Hotle, 222 Ga. App. 161, 163, 473 S.E.2d 256, 259–60 (1996)).

The Magistrate Judge found that "Plaintiff's Complaint fails to state a claim for IIED as a matter of law because the nature of the conduct Plaintiff complains about, namely, the foreclosure of the property, does not amount to extreme and outrageous conduct."  ([7] at 34); see also Echeverria v. BAC Home Loans Servicing, LP, 523 F. App'x. 675, 677 (11th Cir. 2013) (affirming Rule 12(b)(6) dismissal of plaintiff's IIED claim based upon holder of mortgage loan and loan servicer's conduct, including "not providing the plaintiffs with correct information concerning their mortgage loan, refusing to modify that loan, losing papers and documents, and threatening foreclosure" and finding that conduct was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency") (citation and internal quotation marks omitted); Lewis v. PNC Bank, N.A., 2013 WL 6817090, at *7 (N.D. Ga. Dec. 26, 2013) (A "lawful foreclosure, as emotionally distressing as that may be, is not extreme and outrageous behavior that would give rise to a claim for [IIED].").

The Court finds no plain error in the Magistrate Judge's findings and recommendation as to Plaintiff's IIED claim.

F.  Claims Alleged in the Complaint's Fact Section

Plaintiff also appears to allege two claims in addition to the causes of action listed in her Complaint.

1.  TILA

Plaintiff, in passing, alleges that she sent Defendant "a request for disclosure, rescission, and validation of [the] debt" and that Defendant "failed to comply with its legal obligations under TILA[.]" ([1.1] ¶¶ 10, 12). The Magistrate Judge found this one, conclusory allegation insufficient to state a claim that Defendant violated TILA. ([7] at 35). The Magistrate Judge also found that, even if Plaintiff alleged facts sufficient to state a violation of TILA, TILA does not apply to Defendant. (Id. at 36). The Court finds no plain error in the Magistrate Judge's findings and recommendation as to Plaintiff's apparent TILA.

2.  RESPA

Plaintiff also makes a conclusory statement in her Complaint, without identifying it as a separate cause of action, that Plaintiff sent Defendant a "qualified written request" under RESPA on May 12, 2017. ([1.1] ¶ 10).

16

RESPA imposes certain requirements on servicers of federally-related mortgage loans, including responding to inquiries and providing certain notices to borrowers. "If the servicer does not comply with RESPA's deadlines, the borrower can recover actual damages from the failure to communicate, but the borrower is limited to actual damages unless there is a pattern or practice of noncompliance." Bivins v. Nationstar Mortg., LLC, 2016 WL 3855549, at *5 (N.D. Ga. July 14, 2016) (quoting Marks v. PHH Mortg. Corp., 2011 WL 5439164, at *3 (M.D. Ga. Nov. 9, 2011) (citing 12 U.S.C. § 2605(f))) (internal quotation marks omitted). "An allegation of damages is a necessary element of a RESPA claim." Russell v. Nationstar Mortg., LLC, 2015 WL 5029346, at *6 (S.D. Fla. Aug 26, 2015).

The Magistrate Judge found Plaintiff "does not allege facts to establish that the correspondence she claims to have sent [Defendant] on May 12, 2017, constituted a valid QWR or met the statutory definition of a QWR." ([7] at 40). The Magistrate Judge noted that "[a]lthough Plaintiff asserts that a request for information was sent to Defendant on May 12, 2017, she does not adequately describe the information or documents sought or the questions posed therin; she does not set forth the contents of the communication nor does she attach the communication to the Complaint." (Id.). The Magistrate Judge further noted Plaintiff has not pled that she suffered any actual damage as a result of the alleged

17

failure to respond to her QWR, or that Defendant engaged in a pattern or practice of not responding to QWRs.  (Id. at 41).

The Court finds no plain error in the Magistrate Judge's findings and recommendation as to Plaintiff's alleged RESPA claim.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Magistrate Judge Janet F. King's Final Report and Recommendation [7] is **ADOPTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**. [4]

**SO ORDERED** this 1st day of December, 2017.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

[4] The Court dismisses with prejudice *all claims*, including those referred to in the Complaint's Fact Section.  The claims include: Plaintiff's fraudulent conversion claim alleged in Count I; Plaintiff's mortgage servicing fraud claim alleged in Count II; Plaintiff's request for declaratory judgment alleged in Count III; Plaintiff's claim within Count IV alleging violations of the GFBPA; Plaintiff's claim within Count IV alleging violations of the FDCPA; Plaintiff's fraud or attempted fraud claim alleged in Count V; Plaintiff's IIED claim alleged in Count VI; and Plaintiff's TILA and RESPA claims alleged in the Fact Section of her Complaint.